EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* LUIS M. ROSADO, acusado y recurrente.

Número: 97    Resuelto: 31 de mayo de 1963

*Félix Rivera Torres,* abogado del peticionario; *J. B. Fernández Badillo, Procurador General,* y *Jorge Segarra, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ PRESIDENTE SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

Julia Marín Rodríguez contraje matrimonio con Jesús Espinosa el 10 de enero de 1956 y se separó de éste al día siguiente. Espinosa embarcó para Estados Unidos ese mismo día, donde aún se encontraba el 28 de diciembre de 1960.

En el mes de julio de 1956, Julia y el aquí recurrente Luis M. Rosado, comenzaron a vivir bajo el mismo techo como marido y mujer. De esas relaciones nació en Fajardo, el 5

de mayo de 1957, una niña a quien se dio el nombre de Nilda, cuyo nacimiento fue inscrito en el Registro Demográfico de ese pueblo tres días después—el 8 del mismo mes y año— siendo sus padres, según dicha inscripción, Luis Miguel Rosado Alejandro y Julia Marín Rodríguez. Ambos firmaron el acta sobre el nacimiento de Nilda.

Julia Marín y el recurrente se separaron en septiembre de 1957, yéndose ella a vivir a Juncos. Desde que se separaron, Rosado le estuvo pasando tres dólares semanales para alimentos de su hija Nilda, hasta que en enero de 1960 dejó de hacerlo.

El 20 de diciembre de 1960 Julia Marín Rodríguez presentó denuncia contra Luis Miguel Rosado Alejandro por el delito de abandono de menores. Éste fúe convicto por el Tribunal de Distrito y sentenciado a la pena de un mes de cárcel, la cual fue suspendida mientras pasara a su hija la suma de $3.50 semanales para alimentos. En apelación el Tribunal Superior confirmó la sentencia y en *Certiorari* a este Tribunal expedimos el auto para revisarla.

En el juicio en el Tribunal de Distrito se admitió sin objeción el certificado del acta de nacimiento de Nilda Rosado Marín. La defensa de Rosado descansó exclusivamente en la condición de mujer casada de Julia Marín, invocando nuestra decisión en el caso de *Pérez* v. *Tribl. Superior*, 81 D.P.R. 832 (1960). Igual posición asumió en el Tribunal Superior e idéntico planteamiento hace en su recurso ante nos.

El caso de *Pérez* v. *Tribl. Superior*, situado en su apropiada esfera, no es aplicable a la situación que presenta el caso de autos. En éste—contrario al de *Pérez* en el cual el alegado padre negó como cuestión de hecho la paternidad de la menor—el acusado dio título como hija suya a Nilda, cuya paternidad reconoció voluntariamente en el acta de nacimiento tres días después de ocurrido éste, única inscripción llevada al Registro respecto a dicho nacimiento. A los fines de una acción penal por abandono de menores, el recono-

cimiento así hecho tiene la eficacia probatoria que a los certificados de inscripción otorga la ley, [1] cuando en el Registro Demográfico no exista otra inscripción contradictoria de esa paternidad, [2] sin que pueda escapar a la responsabilidad criminal que engendra su propio acto quien ha asumido la paternidad formalmente ante los órganos oficiales del Estado. En tal situación no existe aquí controversia alguna sobre paternidad que bajo las circunstancias presentes en el caso de *Pérez* v. *Tribl. Superior*, supra, hagan necesario recurrir a la acción plenaria civil, según establecimos en *Agosto* v. *Javierre*, 77 D.P.R. 471 (1954), por no poderse ventilar dentro de la causa criminal la impugnación que de la filiación en sí conllevaría una determinación judicial de la controversia sobre paternidad.

*Por los motivos expuestos procede la confirmación de la sentencia.*

---

[1] ". . . La copia del récord de cualquier nacimiento, casamiento o defunción, después que sea certificada por el Secretario de Salud o por la persona autorizada por él, constituirá evidencia prima facie ante todas las cortes de justicia de los hechos que consten en la misma. . ." Art. 38 de la Ley Núm. 24 de 22 de abril de 1931, según enmendada (24 L.P.R.A. sec. 1237).

[2] El *dictum* en el escolio (3) del caso de *Pérez* v. *Torres*, 79 D.P.R. 611, 616 (1956), al efecto de que "Un padre natural puede reconocer, por su propia y voluntaria determinación, tanto en acta de nacimiento como en otro documento público, incluyendo declaraciones juradas (24 L.P.R.A. secs. 1132, 1134, 1165 y 1231) a un hijo que ha procreado en mujer soltera. Este acto suyo, sin embargo, es ineficaz en derecho cuando se trata de un hijo procreado en mujer casada, constante el matrimonio de ésta con otro hombre, porque implica la destrucción del status de legítimo que la ley confiere a dicho hijo. Pero el acto de reconocimiento voluntario quedaría convalidado en caso de que posteriormente se destruya la legitimidad por los medios y en la forma que admite la ley", debe situarse en su justa perspectiva, y entenderse su expresión sólo aplicable, además de aquellos en que mediare fraude, a los casos en que exista una inscripción previa contradictoria de la paternidad.